The MUTER COMPANY, Plaintiff,

v.

Ben E. SCHWARTZ and Ida E. Schwartz, d/b/a Perfection Electric Company, Defendants.

Civ. A. 55 C 2024.

United States District Court
N. D. Illinois, E. D.
Oct. 9, 1957.

Howard H. Darbo and Jones, Darbo & Robertson, Chicago, Ill., Jerome F. Kramer and Albert R. Teare, Bates, Teare & McBean, Cleveland, Ohio, for plaintiff.

Jules L. Brady, William J. Stellman, Richard S. Phillips, James R. Sweeney, and Schroeder, Hofgren, Brady & Wegner, Chicago, Ill., for defendant.

IGOE, District Judge.

1. This is a suit under the patent laws of the United States against the defendants for infringement of United States Letters Patent No. 2,469,773 issued on May 10, 1949 to Hugh S. Knowles.

2. Plaintiff, the Muter Company, is the owner of legal title to the patent in suit.

3. Defendants, Ben E. Schwartz and Ida E. Schwartz, are partners doing business as Perfection Electric Company.

4. The patent in suit relates to a centering member, a device used in loud speakers for maintaining the voice coil centered in the air gap of the speaker, and as illustrated in the drawings of the patent, the patented centering member is made of a single sheet of material which has been perforated so as to provide in the material a large number of perforations therein.

5. Defendants manufacture and sell loud speakers which incorporate centering members for the voice coil of the loud speaker, which centering members are accused by the plaintiff to infringe claims 1, 3 and 7 of the patent in suit.

6. The centering members used by the defendants and accused to infringe the patent in suit are made of inherently porous cloth. These centering members are purchased ready-made by the defendants and incorporated without alteration into loud speakers sold by the defendants.

7. Each claim in suit requires the centering members to have "perforations" therein and defendants' accused centering members are provided with no such perforations.

8. The common ordinary definition of the word "perforation" is a hole made by piercing, punching or boring and implies some physical act done upon the material in which the perforation exists. As used in the claims of the patent in suit, the word "perforation" has its normal ordinary meaning. The centering members used by the defendants and accused to infringe the patent in suit are not provided with holes made by piercing, punching or boring and thus are not provided with "perforations" as that word is used in the patent in suit.

9. The Patent Office considered the word "perforations" to mean something distinct from merely "porous" and required, during the course of prosecution of the application which resulted in the patent, that the drawings showing merely a porous centering member be amended also to show perforations therein in order to support claims directed to a centering member having such perforations; the applicant did not argue that perforations were to be found in the centering member that was merely porous but without objection, amended the drawings of the application to show the perforations by adding the small round circles in the upper lefthand quadrant of Figure 2.

10. During the prosecution in the Patent Office of the application which resulted in the patent in suit, the patentee presented a claim (Claim 40) wherein the centering member was described merely as being "inherently porous". The Patent Office denied this claim as being too broad and in failing to include "distributed perforations" whereupon the patentee acquiesed in this rejection, withdrew the claim and substituted therefor a claim calling for a centering member having "distributed perforations" therein and otherwise identical with the previously submitted claim and therefore the plaintiff is estopped from contending that centering members which are merely inherently porous fall within the meaning of the claims limited to centering members provided with perforations.

11. During the prosecution in the Patent Office of the application which resulted in the patent in suit, claim 40 which the patentee presented describing the centering member merely as being "inherently porous" is a claim reading directly on the accused structure; the Patent Office, however, refused to allow the claim and the patentee acquiesced in this ruling and withdrew such claim, thus the patent owner cannot here assert to claim the benefit of the rejected claim or such a construction of the claims remaining in the patent as would be equivalent thereto.

12. The patent in suit was held to be not infringed by centering members, identical for all practical purposes to the centering members herein accused to infringe, in a suit in the Federal District Court of the Northern District of Ohio, Eastern Division, involving the Magnavox Company and the plaintiff herein.

13. The patent in suit, while filed in 1942, claims to be a division of an application filed in June of 1934. Since 1945 defendants have been making and selling loud speakers embodying centering members which are here accused to infringe and the defendants have sold a great number of speakers so constructed on a large scale throughout the United States. Plaintiff knew, or should have known, of such sales soon after 1945. In 1950, the defendants quadrupled their plant capacity devoted to loud speaker manufacture and yet no notice of infringement was given to defendants until February of 1955. The plaintiff and its predecessors in title to the patent in suit have stood by and done nothing to protect their rights for a number of years while the defendants were building up a business which they thought was legitimate and were spending money in enlarging their plant. Thus there is not only a long delay chargeable to the plaintiff in instituting litigation on its claims of infringement, but also a change in position of the defendants to the extent that it would be inequitable to allow plaintiff to enforce its claim for such infringement.

14. Plaintiff asserts for its patented centering members three important features, namely: that it is a one piece construction; that it is dustproof and that it permits air to pass so as to prevent damping of the speaker by trapping air behind the centering member in the chamber occupied by the voice coil. Each of these features is to be found in the prior art.

15. The plaintiff argues that the patented centering member affords improved results in that it can be used to prevent objectionable particles of dust from

entering the air gap of a loud speaker while allowing air to pass through it relatively freely, thus avoiding damping of the movement of the voice coil and cone; the prior art patents not only show that other workers in this field were aware of the problems allegedly first solved by the patentee, but clearly indicate that the solution chosen by the patentee was an obvious one.

16. The patents to Boudette (1,893,-049) and Brennan (2,090,025) both show dustproof centering members made of a single piece of material, while the patent to Engholm (2,261,111) clearly teaches that a centering member may, in addition to centering, perform the additional function of preventing dust from entering the air gap while allowing air to pass therethrough.

17. The centering member claimed in the patent in suit, differs from the centering members shown in the patents to Boudette and Brennan only in requiring the presence of perforations therein and thus the step forward which Knowles, the patentee, made was simply to perforate the centering members of Boudette or Brennan.

18. Inasmuch as the purpose of providing perforations in the centering member was to permit air to pass through the centering member and thus prevent damping of the speaker, it did not require invention to perforate the centering members of Boudette and Brennan in view of the teaching of the British patent to Agate (351,204) which shows this very expedient.

19. The Kolster Patent (Re. 17,806) discloses a centering member made of a single sheet of material which the patentee states may be linen cloth and thus the Kolster patent discloses a one piece, dustproof centering member which is pervious to air and anticipates the claims of the patent in suit if they are construed to read upon the cloth centering member used by the defendants.

20. The Jensen Patent (1,886,816) recognizes both of the problems of dustproofing and preventing damping of the movement of the cone and voice coil of a loud speaker and teaches that both problems may be solved by covering the openings of the loud speaker with a porous cloth which permits air to pass through it and acts as a filter for dust particles.

21. Prior to the alleged invention of the patent in suit, the predecessor of Stevens Products Company of East Orange, New Jersey, manufactured and sold centering members made of buckram, an open-weave cloth. These centering members were made of a single sheet of cloth, were inherently porous and prevented the passage of dust particles therethrough.

22. The centering members used by the defendants and accused to infringe the patent in suit follow closely the construction of the centering members known to the predecessor of Stevens Products Company prior to the alleged invention of the centering members of the patent in suit.

23. Prior to the alleged invention of the patent in suit, the Hawley Products Company of St. Charles, Illinois, manufactured and sold centering members made of a felted fiber material; these centering members consisted of a single sheet of material, were inherently porous and prevented the passage of dust particles therethrough; and these centering members were sold to various customers including the Grigsby-Grunow Company, for use in the loud speakers incorporated in their "Majestic" radios.

24. The centering member defined in the claims in suit has had no commercial success.

25. Centering members of the unperforated, porous cloth type here accused to infringe have been sold by the millions for more than twenty years, but these successful centering members were not produced by the claimed invention of the patentee, but rather, follow the developments known to Clifford E. Stevens of Stevens Manufacturing Corporation (the predecessor of the now Stevens Products Company) and others prior to the invention of the patentee herein.

## Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this suit.

2. The claims of the patent in suit, if valid, are not infringed by the defendants.

3. The plaintiff is estopped to assert that the claims of the patent in suit can be construed to cover a centering member which is made of inherently porous material and is not provided with perforations.

4. If the claims of the patent in suit are construed to be broad enough to read upon a centering member which is made of inherently porous material and is not perforated, the claims would be invalid as lacking invention over the disclosure of the prior art patents cited by the defendants.

5. If the claims of the patent in suit are construed broadly to read upon a centering member made of inherently porous material and not perforated, the claims would be invalid over the prior knowledge of the Stevens Mfg. Corp., the predecssor of Stevens Products Company.

6. If the claims of the patent in suit are construed broadly to read upon an inherently porous centering member which is not provided with perforations, the claims are invalid over the prior knowledge of and use by the Hawley Products Company.

7. The patent in suit is invalid as lacking invention over the prior art patents relied upon by the defendants.

8. The plaintiff is guilty of laches and it would be inequitable to allow plaintiff to enforce his claim for infringement against the defendants.

9. The plaintiff is entitled to none of the relief prayed for in its complaint.

10. The defendants are entitled to the relief prayed for in their counterclaim for Declaratory Judgment that the patent is invalid or if valid is not infringed.